No. 3699.

## STATE ex rel. BLACKEMORE, WOOLDRIDGE & Co., *v.* JAMES GRAHAM, Auditor.

A third party, appealing from a judgment, must allege and show a direct pecuniary interest in the subject matter of the suit.

The act of nineteenth April, 1871, which provides for the refunding of certain taxes improperly collected by the State, and on which the relators in this case rest their claim, is unconstitutional, as it clearly increases the State debt to an amount exceeding twenty-five millions.

Said act of the nineteenth April, 1871, is also in violation of article 111 of the State Constitution, because, while creating a debt exceeding one hundred thousand dollars, it does not provide adequate ways and means for the payment of the current interest and of the principal when the same shall become due.

No appropriation was made by law for drawing from the Treasury the large sum needed to reimburse the numerous claimants applying for this refunding of taxes under the law of 1871, which is, therefore, in violation of article 104 of the State Constitution.

The act No. 55, approved April 4, 1865, has never been held to be in violation of the State Constitution.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble,* J. *Semmes & Mott, Breaux, Fenner & Hall, Hays & New,* for relators. *Hornor & Benedict* and *W. W. Howe,* for respondent. *S. Belden,* Attorney General, for State in intervention. *Denne & Belden,* for John Klein, in intervention.

TALIAFERRO, J. By section three of an act of the Legislature, approved April 4, 1865, entitled "An act to provide for the increase of the revenue and raise means to pay the interest on the State debt," it was provided "That there shall be assessed and collected the sum of one quarter of one per cent. on the annual gross sales or receipts of each and every person pursuing any trade, profession or occupation, whose annual receipts exceed the sum of two thousand dollars." A class of merchants in New Orleans, engaged principally in what is called "the Western trade," receiving and selling, under commission, Western produce, such as pork, bacon, flour, corn, cotton bagging, etc., made objection to the payment of this tax, on the ground that commodities of that kind were consigned to them for sale by citizens of the United States residing beyond the limits of the State of Louisiana, and sold by them in the form in which such produce was prepared by their constituents beyond the limits of the State of Louisiana. They contended that the property thus introduced into Louisiana from other States, and thus sold, is exempted, by the Constitution of the United States, from import duty or other tax for the benefit of the State of Louisiana. In 1867, the commercial house of Kennedy & Co., large dealers in Western produce, was sued by the State for the amount of tax assessed to them under the act of fourth of April, 1865, and the question underwent judicial investigation.

In the case of the State *v.* Kennedy & Co., 19 An. 424, this Court held the tax to be null on the ground that it was contrary to section

40

ten of the first article of the Constitution of the United States, which declares that "No State, without the consent of Congress, shall lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

The Legislature passed an act approved on the nineteenth of April, 1871, which provided "that all taxes which were collected by the State under the third section of an act entitled 'an act to provide for increasing the revenue of the State and raise means to pay interest on the State debt, approved fourth of April, 1865,' shall be and are hereby refunded to the parties who paid the same, or to their proper representatives, and the Auditor of Public Accounts be and he is hereby authorized and required to issue to said parties, or to their proper representatives, certificates for the amount paid by them which shall be receivable by all State tax collectors in payment of the general fund tax."

The purpose of the present suit by Blackemore, Wooldridge & Co. is to compel the Auditor to issue to them certificates for $1411 70, the amount of the aforesaid tax, which they allege they have paid under the act of fourth of April, 1865. They proceeded by mandamus, and a rule being taken against the Auditor to show cause, he answered, in substance, "that prior to the nineteenth of April, 1871, the debt of the State exceeded twenty-five millions of dollars, and that the annual revenues of the State are insufficient to meet the necessary expenditures and current expenses of the State under the present rate of taxation; that the claim of the relators form no part of the current expenditures for the necessary government of the State, or for the maintenance of its peace and order, and that the General Assembly was without power to pass the act of 1871, in violation of the constitutional amendment restricting the State debt, which was promulgated on the fifteenth of December, 1870, and it is therefore null and void. He further answers that the sum collected as taxes under the act of fourth of April, 1865, and which the act of 1871 directs to be refunded, amounts to $525,475 88; that the reimbursement of that sum would be indirectly an appropriation exceeding $100,000, and no means are provided to meet such expenditures, and is in violation of article 111 of the Constitution of 1868.

The Attorney General intervened on the part of the State, adopting the defense of the Auditor. Judgment was rendered in the court below making the mandamus peremptory, and the Auditor appealed.

After the judgment was rendered, Klein, a third party, alleging that his interests were affected by the judgment, appealed. There is a motion to dismiss his appeal on the ground that he shows no interest in the controversy that authorizes his appeal. He sets up in his intervention that he is the owner and holder, as agent, of State warrants to

State ex rel. Blackemore, Wooldridge & Co. v. Graham, Auditor.

an amount over $100,000, payable out of the general fund, and if the judgment appealed from is not reversed he will suffer great injury, and loss exceeding $20,000.

A third party appealing from a judgment must allege and show a direct pecuniary interest in the subject matter of the suit. 21 An. 743. We do not think the intervenor in this case has shown such an interest in the subject matter of the suit as entitles him to appeal. The appeal is therefore dismissed at the cost of the appellant.

We can not regard the act of April, 1871, under which the relators claim to have their debt or amount of tax refunded, otherwise than as virtually creating a debt of more than half a million of dollars. This would clearly increase the State debt to an amount exceeding $25,000,-000, and therefore under the act unconstitutional. It recognizes and makes exigible an obligation to pay certain claimants a sum of money amounting to more than $100,000. It does this in violation of article 111 of the State Constitution, which is express that "whenever the General Assembly shall contract a debt exceeding in amount the sum of $100,000, unless in case of war to repel invasion or suppress insurrection, it shall in the law creating the debt provide adequate ways and means for the payment of the current interest and of the principal when the same shall become due."

"No money," it is provided by the article 104 of the Constitution, "shall be drawn from the treasury but in pursuance of specific appropriations made by law." No appropriation was made by law for drawing from the treasury the large sum needed to reimburse the numerous claimants applying for this reimbursement. The equitable grounds set up in favor of refunding the tax in question we do not regard as entitled to consideration. The decision of this court in the Kennedy case declaring the tax contrary to the Constitution of the United States, can not now be referred to as authority in behalf of those who paid the tax, seeing that the Supreme Court of the United States ruled differently in a case carried before it from Alabama in 1868, where the same question was made, and that tribunal decided that such a tax laid by a State is not contrary to the provisions of the Constitution of the United States. 8 Wallace, 124.

That the act of April 4, 1865, is in violation of the State Constitution has never been held.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that the rule be discharged, the relators paying costs in both courts.

---

LUDELING, C. J., *dissenting.* The defendant has urged several objections to the constitutionality of act No. 93, approved nineteenth of

628      SUPREME COURT OF LOUISIANA,

State ex rel. Blackemore, Wooldridge & Co. v. Graham, Auditor.

April, 1871, only two of which have even the semblance of being well founded. They are, that it violates article 111 of the Constitution, which prohibits the General Assembly from contracting a debt exceeding $100,000, unless it provides for payment of the principal and interest. If it be conceded that a debt was created by that act, still the Legislature did provide for the payment thereof by making the certificates receivable for taxes. The General Assembly was vested with the discretion to say what ways and means should be provided for the payment of the debt, and that discretion is not subject to the control or suspension of the courts. Cooley, Con. Lim. 187 ; 36 Barb. 193; 34 Ind. 137 ; 15 Md. 376; 19 Barb. 81; 23 Ill. 207 ; 22 An. 555.

The other objection is, that the law violates the constitutional amendment, limiting the State debt to $25,000,000. Entertaining the opinion, which I expressed in the dissenting opinion in the case of the Factors' and Traders' Insurance Company v. the City of New Orleans, that there is no natural obligation to pay an unconstitutional tax, I can not recognize that the act aforesaid created a debt. It simply recognized a debt which had existed ever since the erroneous payment of the tax. I dissent, therefore, from the opinion of the majority of the court.

WYLY, J. I concur in the dissenting opinion of the Chief Justice. Rehearing refused.